**John W. POGUE, Appellant,**

v.

**ALLRIGHT, INC., Appellee.**

**No. 11142.**

Court of Civil Appeals of Texas.

Austin.

Feb. 5, 1964.

Rehearing Denied Feb. 26, 1964.

Carl Waldman, Sample & Walker, Beaumont, for appellant.

Baker, Botts, Shepherd & Coates, Robert A. Hall, Houston, for appellee.

ARCHER, Chief Justice.

This is an appeal from a judgment of the Court in favor of defendant, appellee herein, on motion of defendant notwithstanding the verdict, and to disregard certain findings of the jury in a personal injury suit filed by plaintiff, appellant herein, and tried with the aid of a jury which in response to issues had answered certain issues favorable to plaintiff and fixing the damages at $35,000.00.

Appellant alleged negligence of appellee in failing to properly warn plaintiff of the presence of a man lift hole, through which he fell to a concrete floor below and suffered the serious and permanent injuries complained of.

The defendant answered that plaintiff was walking in an area not open to the general public and without using ordinary care for his own safety fell down the man lift hole and was not using that degree of care that would have been used by a person of ordinary prudence under the same or similar circumstances; that such failure proximately caused the matters complained of by plaintiff; that in going onto the area of the premises plaintiff was either a trespasser or a mere licensee and was not an invitee; that the conditions that existed were open and obvious; that by walking into that area not open to the general public, the plaintiff assumed the risk of such conditions and that the accident was an unavoidable one.

The appeal is founded on eleven points assigned as error and are to the effect that the Court erred in overruling plaintiff's motion to disregard issues Nos. 7 and 8 and for judgment, because such issues were evidentiary only and did not establish any controlling issue of fact as a defense to the primary negligence findings on issues Nos. 3 and 4; are defensive issues to issues Nos. 5 and 6; in overruling plaintiff's objection to issues Nos. 7 and 8, because there were no pleadings substantiating the submission of this issue and such issue failed to con-

tain the element as to whether or not plaintiff realized, or should have realized and appreciated the full extent of the "Danger or Risk," or whether plaintiff voluntarily put himself in the way of the particular risk, as a result of an intelligent choice; in overruling plaintiff's objection No. 2(j), because issue No. 8 did not inquire whether plaintiff voluntarily exposed himself to the risk in question as the result of an intelligent choice, because there was no evidence, or that the evidence is insufficient to support a finding that plaintiff knew of the man lift hole, or appreciated the danger of falling into such hole.

The plaintiff in his petition alleged three dangerous features of the premises where he was injured:

"(1) An 'opening' which was unguarded and was being used for a continuous elevator;' otherwise referred to as an 'opening' and said 'opening' referred to in the testimony of the witnesses as a 'manlift hole';

(2) An inadequate guard;

(3) Inadequate lighting."

The case was submitted to the jury on 15 special issues.

In reply to Special Issue No. 1, they answered that the defendant did not fail to light the parking lot area.

In response to issues Nos. 3, 4, 5 and 6 the jury found that the defendant failed to give plaintiff such warning of the presence of the man lift hole, as a person of ordinary prudence would have done, and that such failure was a proximate cause of the injuries sustained by plaintiff and that defendant failed to maintain such guard around the opening as a person of ordinary prudence would have done and that such failure was a proximate cause of the injuries.

Conditioned on affirmative answers to issues Nos. 1, 2 and 5 or either of them, the Court submitted issues Nos. 7 and 8 and

each was answered in the affirmative by the jury, and read:

"7. Do you find from a preponderance of the evidence that the plaintiff, John W. Pogue, voluntarily exposed himself to such risks as existed at the time and on the occasion in question?

"8. Was the condition of the wire guard surrounding the elevator shaft open and obvious to the plaintiff, John W. Pogue, just prior to the time he fell?

"If you find from a preponderance of the evidence that the condition was not open and obvious to the plaintiff, John W. Pogue, answer: 'NO, it was not open and obvious.'

"If you find from a preponderance of the evidence that the condition was open and obvious to the plaintiff, John W. Pogue, answer: 'YES, it was open and obvious.'

"A condition is open and obvious to a person if such person knows or in the exercise of ordinary care should know of it, and if such person also appreciates or in the exercise of ordinary prudence should appreciate the full extent of the danger involved in its use."

As may be observed, appellant's points of error are directed principally to the action of the Court in overruling his motion for judgment and objections to Special Issues Nos. 7 and 8.

■ We believe that the Court was justified in entering the judgment for defendant, based on the answers of the jury to Special Issues Nos. 7 and 8 and that such issues are not evidentiary but furnished a complete defense to the defendant as against the primary negligence charged in Special Issues Nos. 3, 4, 5 and 6.

Issue No. 8 in inquiring as to the condition of the wire guard surrounding the elevator shaft, must have had reference to and inquired as to the presence of the elevator shaft or man lift hole.

· The wire guard was less than 25 inches from the shaft itself There could be no danger in connection with the wire guard, per se, the only danger which could exist arises from the shaft surrounded by the wire guard.

By its answer to Special Issue No. 7 the jury found that the plaintiff voluntarily exposed himself to such risks as existed at the time and on the occasion in question.

Appellant objected to the submission of Special Issue No. 8, because there was no evidence or the evidence was insufficient to support such issue; that an affirmative answer would be so against the great weight and preponderance of the evidence as to require the Court to set the same aside; that such issue is evidentiary and does not inquire as to an ultimate issue of fact and a comment upon the weight of the evidence; that the instructions given by the Court defining an open and obvious condition fails to include the elements that plaintiff voluntarily exposed himself to such risks and as the result of an intelligent choice.

The Court overruled this objection and properly so. *Personal Injuries Resulting from Open and Obvious Conditions—Special Issue Submission in Texas*, an article by W. Page Keeton, 33 Tex.Law Rev. 1.

Objections were made to the submission of Special Issue No. 7 in much the same manner and content as that to Special Issue No. 8, and overruled by the Court and properly so.

We have hereinabove discussed Issues Nos. 7 and 8 and the manner of such submission and do not elaborate further thereon.

In answer to Special Issue No. 1 the jury found that the defendant did not fail to light the parking lot in the vicinity of the opening in question.

By review plaintiff's Exhibit 1 and defendant's Exhibits 1–4 show the location and condition of the area and the first floor of the parking garage were open and obvious and obvious as a matter of fact and of law, and this would include the elevator shaft, the wire guard surrounding the shaft and the hole through which the elevator shaft went. Missouri Pacific Railroad Company v. Owen, 306 F.2d 887 (C.A. 5th, 1962)

The plaintiff had purchased a racoon.

The colored parking attendant S. L. Patton testified in part:

"Q. Now in your own words, I want you to turn to these folks here and tell them what you saw and what you heard from the time Mr. Pogue walked in that entrance until the time he had his accident.

"A. Well, on the night while I was on duty this fellow, another man and Mr. Pogue came into the building, I was on my way to the man lift or elevator and as he got close to me he pulled the coon and said 'Come here, boy, I'm going to make this coon bite you.' I saw him come in and I kept on doing what I was doing. He kept coming and I got up on the man lift. He kept coming and stumbled over the cement block. I reached and tried to catch him but he fell off in the hole. * * *"

and further testified:

"Q. What did you think or feel when he came forward toward you and said, 'Here, boy, come here, I'm going to make this coon bite you.' Were you afraid?

"A. Yes, sir, I was sort of afraid because I didn't want that coon to bite me because I'd heard about coons, that they are kind of vicious at times."

The plaintiff testified in part:

"Q. Now, you have heard the statement here that the gentlemen here made about your trying to scare some colored man with the coon or trying to make him bite him. Is that true or not?

"A. No, sir, I didn't."

On cross examination plaintiff testified:

"Q. But at any rate, it is your testimony that this colored boy was walking alongside of you and you all were chatting about the racoon, is that right?

"A. Yes, sir.

"Q. Having a friendly little conversation?

"A. Just talking, yes, sir."

In answer to issue No. 9, the jury replied that plaintiff advanced toward S. L. Patton with a racoon extended toward Patton.

In reply to Issue No. 10 the jury found that the act of plaintiff in advancing toward Patton was not negligence.

■ The answer of the jury to issue No. 10, in view of the evidence, a portion of which we have inserted hereinabove, is so against the great weight and overwhelming preponderance of the evidence as to be clearly wrong, and such conduct did constitute negligence and proximate cause as a matter of law.

■ In going into the area not designed for use on the premises by the public the plaintiff became a licensee as a matter of law, and the defendant only owed the duty to refrain from willfully, wantonly or through gross negligence injuring the plaintiff, and there is no pleading or evidence that the defendant injured the plaintiff, willfully, wantonly or through gross negligence. Johnson v. Macias, 193 F.2d 475 (C.A. 5th, 1952); Carlisle v. J. Wein-

garten, Inc., 137 Tex. 220, 152 S.W.2d 1073, 1941.

 The plaintiff contended in his petition that he was an invitee. The defendant in its answer alleged that plaintiff was a trespasser or licensee. The status of the plaintiff was in issue and the burden of establishing his status was on plaintiff. No issue was requested concerning his status and no objection was made as to the absence of such issue from the charge. The plaintiff waived a jury determination of his status and it is deemed that the Trial Court found, in support of the judgment, that plaintiff was a licensee. Rule 279, Texas Rules of Civil Procedure.

In Burton Construction & Ship Building Company v. Broussard, 154 Tex. 50, 273 S. W.2d 598, no writ history, it was held that:

" ' * * * Where a person while lawfully on the property of another or on public property as an invitee leaves that portion of the property on which he has been invited, or uses the property on a venture in his own interests and not within the scope of his invitation or purpose for which the property was reasonably intended, he loses his status as an invitee and becomes a trespasser or mere licensee, * * *. When a person becomes a trespasser, he remains such until he has acquired a different status.' "

Witness Arthur Smith testified as follows:

"Q. Mr. Smith back in November of 1957 was it the practice of the Allright Parking Garage to allow their customers to ride this one man lift between floors?

"A. No sir.

"Q. Have you ever known of any instance of a customer riding one of those lifts in a garage of yours?

"A. No sir no instance.

"Q. Directing your attention to this area inside this wire enclosure where the man lift is shown in defendant's Exhibit No. 1. Would you tell the jury for whose use that area is maintained.

"A. For the employees only.

"Q. Had you ever known of a customer entering into that area enclosed by the wire.

"A. No sir, I hadn't."

Witness William D. Daniel testified:

"Q. Now I show you a picture marked defendant's Exhibit No. 4 which purports to be a picture looking from the Fannin Street side of the layout of the garage there. Was there an area there on the night of November 8, 1957, that was available for customers to stand and wait for their cars?

"A. Plenty of room, all this room here in front.

"Q. Now when this man came in carrying the coon on the night of November 8, 1957, did he walk over to you and hand you his ticket and ask you to stamp it?

"A. No sir.

"Q. Was it your practice to allow customers to ride that man lift there in that garage?

"A. No sir. I asked them not to ride it and they didn't ride it.

"Q. Did you allow customers to go inside that little wire area that surrounds that man lift?

"A. No sir."

It appears from the evidence and from the jury's answer to Special Issue No. 9 that the plaintiff was using the defendant's premises on a venture in his own interest and not in the scope of his invitation, in

view of his conduct in threatening the defendant's young employee with a racoon, and was guilty of contributory negligence as a matter of fact and of law.

We insert herein certain pictures of the premises which must have been considered in light of the jury's answer to Special Issue No. 1, which said that the lighting in the garage was adequate to show that all conditions on the floor of the garage about which plaintiff complains were open and obvious.

The judgment of the Trial Court is affirmed.

Affirmed